IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
LUIS B. MARCANO,                )
                                )
     Plaintiff,                 )
                                )
         v.                     )   1:11cv16(JCC/IDD)
                                )
FOX MOTORS, INC.,               )
                                )
     Defendant.                 )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on defendant Fox Motors, Inc.'s ("Fox Motors" or "Defendant"), Motion Under 12(b)(6) for Summary Judgment[1] as to Count V [Dkt. 4] (the "Motion"). For the following reasons, the Court will deny the Motion.[2]

### I. Background

A. <u>Factual Background</u>

This case arises out of Plaintiff's April 2010 purchase of a Dodge Ram van and October 2010 attempted purchase of a Chevrolet Tahoe from Defendant. (Complaint [Dkt. 1]

---

[1] Defendant confusingly titles this motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6). Taking the Motion as a whole, it is clear that Defendant is moving to dismiss Count V. The Court will treat the Motion as a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

[2] In his Opposition to Defendant's Motion, Plaintiff asserts that he "should be awarded his costs and expenses for having to oppose this improper motion." (Opposition [Dkt. 6] at 2.) As set forth in the Court's March 28, 2011 Order [Dkt. 14], the Court will not award any such costs or expenses for having to oppose the motion.

("Compl.") ¶¶ 7, 19, 59.) Plaintiff saw an internet advertisement by Fox Motors for a 2001 Dodge Ram, with a listed sale price of $7,995.00, and called Defendant to discuss the vehicle. (Compl. ¶ 7.) When he called, Plaintiff spoke with Musa Nazary, president of Fox Motors ("Nazary"). *Id.* Nazary represented to Plaintiff that the van was in good condition and that Nazary had been driving the van personally and was familiar with its condition. *Id.*

After this conversation, Plaintiff went to Fox Motors to see the van, but it was not on Defendant's lot. *Id.* Plaintiff returned to Fox Motors a second time, and, again, the van was not on the lot; Nazary told Plaintiff that the van was in the shop getting a new muffler. (Compl. ¶ 8.) Plaintiff then returned to Fox Motors a third time but was told the van was being washed, so Plaintiff could not take it for a test drive. (Compl. ¶ 9.) Nazary again represented to Plaintiff that he personally had been driving the van and that the van was free of any mechanical defects. *Id.* Based upon Nazary's representations, Plaintiff agreed to purchase the van. *Id.*

Nazary prepared the purchase paperwork. (Compl. ¶ 10.) As part of the sale price, Defendant added to the amount of $1,148.00 for a service contract. *Id.* Nazary prepared two service contracts, one with Preferred Warranties, Inc., for a term of 3 months or 5,000 miles, and the other with Auto Life

R/X, for 5 years or 100,000 miles. *Id*. The first warranty had a listed price of $199.00, but the second had no specified price. *Id*. Both warranties covered the van's transmission. *Id*. Nazary represented to Plaintiff that Plaintiff needed these warranties in the event the van had any problems. *Id*.

Shortly after his purchase of the van, Plaintiff discovered that the van's transmission was not operating correctly and attempted to obtain assistance from the warranty companies to repair the defect. (Compl. ¶ 14.) Upon contacting the two companies, Plaintiff learned that Defendant had not submitted the warranty policies and had not paid for the warranties as set forth in the purchase documentation. *Id*. As a result, Plaintiff had no warranty coverage for the van. *Id*. Defendant initially refused to repair the van. *Id*. Nazary later agreed to pay for half of the cost of any repairs, but when the initial attempt at repairs failed to fix the problem, he refused to provide any further payment. (Compl. ¶ 15.) According to Plaintiff, Defendant did not intend to purchase any warranties on behalf of Plaintiff and did not do so. (Compl. ¶ 16.) Instead, Defendant retained for itself the $1,148.00 of the total purchase price allocated to the two warranties. (Compl. ¶ 18.)

Despite this experience, Plaintiff returned to Fox Motors on October 1, 2010, and attempted to purchase a Chevrolet

Tahoe. (Compl. ¶¶ 18-19.) Nazary told Plaintiff to submit a new financing application and provide a $1,500.00 down payment for the Tahoe. (Compl. ¶ 19.) Plaintiff provided the down payment in three separate checks, each in the amount of $500.00, two of which were post-dated. *Id.* Plaintiff did not take the Tahoe with him. *Id.* Plaintiff called Fox Motors a few days later asking when he could pick up the Tahoe and was told he had been denied financing. (Compl. ¶ 20.) Plaintiff asked for the return of each of his checks, but, according to Plaintiff, Defendant cashed the first $500.00 check, claiming it was a processing fee for Plaintiff's financing application. *Id.*

By mid-October 2010, the van's transmission problem worsened to the point where the van was rendered useless. (Compl. ¶ 24.) Plaintiff again contacted the warranty companies and again discovered that Defendant had not submitted the warranty applications and fees to the companies. (Compl. ¶ 23.)

B. Procedural Background

Plaintiff filed a five-count Complaint against Defendant on January 7, 2011. [Dkt. 1.] Defendant filed the Motion on February 10, 2011 [Dkt. 4], and Plaintiff opposed the Motion on February 22, 2011 [Dkt. 6].

Defendant's Motion is before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the

presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Analysis

Plaintiff alleges five claims in the Complaint. Defendant moves to dismiss only Count V, for fraud. As an initial matter, the Court is exercising supplemental jurisdiction[3] over Plaintiff's fraud claim pursuant to 28 U.S.C. § 1367(a) and accordingly must apply Virginia law. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 n.7 (4th Cir. 1992); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 628 n.27 (E.D. Va. 2004).

---

[3] This Court has "federal question" jurisdiction pursuant to 28 U.S.C. § 1331 over Count I, alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226, and Count II, alleging violations of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*

In Virginia, to succeed on a claim for fraud, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[4] *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (2005) (citations omitted).

Defendant argues Count V should be dismissed because "[t]he first and only duties which the parties owe to one another were created when they entered into a contract to purchase the vehicle(s). Outside of the Contract, the parties have no legal relationship and they have no duties to on another." (Motion [Dkt. 4] ("Mot.") at 2.) Defendant argues that the Virginia Supreme Court "has constantly held that fraud claims arising out of a contractual duty do not state a proper claim." (Mot. at 2.) Defendant cites *Augusta Mutual Insurance Company v. Mason*, 274 Va. 199 (2007), in support of this proposition.

In Virginia, "whether a cause of action sounds in contract or tort is ultimately determined by the source of the

---

[4] The elements of actual fraud and fraudulent inducement are effectively the same. "To state a cause of action for fraudulent inducement of contract under Virginia law, a plaintiff must allege that the defendant made 'misrepresentations [that] were positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.'" *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (quoting *Lucas v. Thompson*, 61 Va. Cir. 44, 2003 WL 483831, at *3 (Va. Cir. Ct. 2003)).

7

duty[5] violated, and that a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of duty arising in tort." *Kaltman v. All Am. Pest Control, Inc.*, --- S.E.2d ----, No. 092541, 2011 WL 745402, at *4 (Va. Mar. 4, 2011). The issue, then, is whether Defendant's alleged fraudulent act was independent of the contractual relationship between Plaintiff and Defendant, such that Plaintiff could maintain an action for fraud.

One well-settled instance, both as a matter of law and as a matter of logic, where the duty allegedly violated arises outside of contract and, thus, may support a cause of action for fraud, is where the allegedly fraudulent representation occurred *before* the contract came into existence. *Abi-Najm v. Concord Condo.*, 280 Va. 350, 363 (2010). Here, Plaintiff pleaded precisely that. Before entering into the contract to purchase the van, Nazary represented to Plaintiff that the van was in good condition and that Nazary had personally been driving the van and was familiar with its condition. (Compl. ¶¶ 7, 60.) Those allegedly fraudulent misrepresentations *preexisted* the contract and were a basis of its formation. *See Abi-Najm*, 280 Va. at 363 ("The fraud alleged . . . was perpetrated . . . before a contract between the two parties came into existence, therefore it cannot logically follow that the duty [] allegedly

---

[5] One such non-contractual duty is that "the common law affords reasonable protection against fraud in dealing." *Wells v. Wells*, 12 Va. App. 31, 35, (Va. App. 1991).

8

breached was one that finds its source in the [contract].")
Accordingly, Plaintiff has properly pleaded fraud based on an alleged fraudulent representation that pre-existed the parties' contract.

Nazary also told Plaintiff that part of the purchase price represented the two warranties. In general, "'if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud.'" *Station # 2, LLC v. Lynch*, 695 S.E.2d 537, 541 (2010) (quoting *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368 (2008)). Where "the alleged 'false representation' is a mere failure to perform on a promise, [such a false representation] is only sufficient [to form a basis for a fraud claim] if the promisor had no intention of performing at the time the promise was made." *Station # 2*, 695 S.E.2d at 541 n.5. Again, Plaintiff pleaded precisely that. Plaintiff's Complaint asserts that Defendant charged Plaintiff for the two warranties but did not purchase and had no intention of ever purchasing the two warranties. (Compl. ¶¶ 14, 16, 61.) Accordingly, Plaintiff has properly pleaded fraud based on Defendant's failure to promise that Defendant had no intention of performing at the time the promise was made.

As for Defendant's reliance on *Augusta Mutual*, that case differs from this case in a crucial respect. Defendant asserts that *Augusta Mutual* addressed whether a claim for fraudulent inducement asserted by the insurance company Augusta Mutual against a *contractor* who allegedly misrepresented to the insurance company certain facts regarding the construction of a chimney in an inspection report that was part of initial application for a homeowner's insurance policy. (Mot. at 2 ("In *Augusta Mutual* [], the Virginia Supreme Court held that the dismissal of a claim for fraudulent inducement was proper when a *contractor* allegedly misrepresented to Augusta Mutual that a chimney was lined with tile.") (emphasis added)); s*ee Augusta Mutual Ins. Co.*, 274 Va. at 202. The insurance company's claim, however, was against an *employee-agent*, not a third-party contractor as Defendant contends, and, thus, *Augusta Mutual* is inapposite here. *See Augusta Mut. Ins. Co.*, 274 Va. at 206; *see also Weiler v. Arrowpoint Corp.*, No. 1:10cv157, 2010 WL 1946317, at *6 n.2 (E.D. Va. May 11, 2010) (Ellis, J.) ("At issue in Augusta Mutual was a claim by an insurance company against an employee-agent who allegedly misrepresented a client's liability risk and accordingly fraudulently induced the insurer to issue a policy.").[6]

---

[6] In *Augusta Mutual*, Augusta Mutual filed a third-party motion for judgment against Herbert L. Jones, Jr., acting as an insurance agent for Augusta Mutual and Lee-Curtis Insurance Services, Inc. ("Lee-Curtis"), Jones's employer at the time he completed the report at issue. 274 Va. at 202. The

## IV. Conclusion

For these reasons, the Court will deny Defendant's Motion.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| April 7, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

court held that Jones's duties to Augusta Mutual arose exclusively from the "Agency Agreement" between Lee-Curtis and Augusta Mutual--the terms of which were applicable to Jones as an agent--and thus sounded only in contract and not in fraud. 274 Va. at 206. The *Augusta Mutual* court also expressly distinguished that case from a situation in which the defendant "did not intend to fulfill its contractual duties when it entered into the agreement," *id.*, effectively acknowledging that a claim identical to Plaintiff's warranty misrepresentation claim alleged here is cognizable in fraud.